IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| John Alfred McClamy, Jr.,<br>    Plaintiff, | )<br>)<br>) | |
| v. | ) | 1:14cv485 (LMB/MSN) |
| Mr. Bell, et al.,<br>    Defendants. | )<br>)<br>)<br>) | |

MEMORANDUM OPINION

John Alfred McClamy, Jr., a Virginia inmate proceeding pro se, filed this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that Dr. Cheshire, doctor at Portsmouth City Jail ("Portsmouth"); and Dr. Kolongo, doctor at Hampton Roads Regional Jail ("Hampton Roads"), showed deliberate indifference to his serious medical needs by failing to provide him with adequate medical treatment for his injured hand. Dr. Cheshire has filed a Motion to Dismiss for Failure to State a Claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), as well as a Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56. Dkts. No. 26, 38. Dr. Kolongo has filed a Motion to Dismiss for Failure to State a Claim. Dkt. No. 35. Both defendants filed supporting memoranda of law and provided plaintiff with the notice required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Plaintiff filed a response only to Dr. Cheshire's Motion to Dismiss. By Order dated June 3, 2015, the Court granted plaintiff's request for an extension of time to file additional responses and he was granted fifteen days in which to file. Plaintiff has not filed any additional responses.

For the reasons that follow, plaintiff's claims will be dismissed as moot. Even if they were not moot, Dr. Kolongo's Motion to Dismiss and Dr. Cheshire's Motion for Summary Judgment would be granted on their merits; rendering Dr. Cheshire's Motion to Dismiss moot.

**I. Mootness**

As relief in this case, plaintiff has requested only "proper medical treatment for [his] hand. (Fixed properly)." Compl., at 6. The events plaintiff complains of occurred during his incarceration in the Portsmouth and Hampton Roads facilities. On July 19, 2014, plaintiff was transferred from Hampton Roads, and is currently housed at St. Bride's Correctional Center. See Dkt. Nos. 14, 20, 21. Therefore, to the extent that the only relief plaintiff seeks relates to his treatment at Portsmouth and Hampton Roads, his claim is moot. See Rendelman v. Rouse, 569 F.3d 182, 186 (4th Cir. 2009) (internal citations omitted) ("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there."). Because his claim is moot, his complaint must be dismissed.

## II. Motion for Summary Judgment

### A. Background

Plaintiff was housed at Portsmouth from July 18, 2012 through January 24, 2014. Compl., at 6. In October of 2013, he injured his right hand while on a work-detail assignment. Id. at 5. He did not report this injury until December 26, 2013, when he saw Dr. Cheshire for an unrelated follow up appointment. See Memorandum in Support of the Motion for Summary Judgment of Defendant Glenn Cheshire, M.D. ("Cheshire Mem.") [Dkt. No. 39], Ex. 1 (Cheshire Aff.) ¶ 1. When he met with Dr. Cheshire, plaintiff informed him that the "pain [had] mostly resolved at this point." Id.; see also Att. A., at 1.

Dr. Cheshire examined plaintiff's hand, and found that plaintiff had a "deformity of the fourth and fifth fingers; he was unable to straighten them ("contractures")." Dr. Cheshire did not observe any swelling or other inflammation of plaintiff's hand. Cheshire Mem., Ex. 1 ¶ 2. Dr. Cheshire ordered an x-ray of plaintiff's hand which revealed old fractures of plaintiff's fourth and fifth fingers, "consistent with an injury that was more than two months old." Id. ¶ 4; see also id.

Att. B, at 1. Dr. Cheshire therefore concluded that plaintiff's injuries pre-dated his work-release injury. Cheshire Mem., Ex. 1 ¶ 4.[1]

Plaintiff consented to have his past medical records sent to Portsmouth. See id. Att. C. These records revealed that on June 28, 2010, he had been examined by Dr. Andrew Caines after an emergency room visit when "something had fallen on his hand."[2] See id. Att. D, at unnumbered page 1. Caines diagnosed plaintiff as suffering from an "impacted comminuted distal one-third right fifth metacarpal facture." Id. Caines reported that plaintiff had limited range of motion in his right little finger, and placed his hand in a splint. Id. at unnumbered pages 1-2. The next day, plaintiff followed up with Dr. Richard Knauft, who took x-rays of plaintiff's hand and diagnosed a fracture in his little finger. Id. at unnumbered page 3. On July 6, 2010, plaintiff received a follow up x-ray, which showed that his finger was healing well. Id. at unnumbered page 5.

Plaintiff's medical records further showed that he had returned to Dr. Knauft on August 24, 2010, after reinjuring his right hand while moving furniture. Id. at unnumbered page 6. Knauft diagnosed plaintiff with an additional fracture to his little finger, and placed the finger in a cast. Id. On April 21, 2011, plaintiff returned to Knauft after injuring his hand a third time. Id. at unnumbered page 8. Knauft again took x-rays and diagnosed plaintiff with a fracture of his little and index fingers. Knauft also indicated that plaintiff had "a relatively undisplaced fracture" of his ring finger. Id. at unnumbered pages 8-9.

After reviewing this information, along with the findings of the December 27, 2013 x-ray, Dr. Cheshire "ruled out an acute fracture or any injury associated with the October 2013 incident as a cause of the deformities to [plaintiff's] hand." Cheshire Mem., Ex. 1 ¶ 10. Dr. Cheshire

---

[1] Plaintiff states that Cheshire also ordered "isolation." Compl., at 5. Dr. Cheshire does not discuss such an order in his affidavit, nor does he indicate that he has any authority to transfer inmates to isolation.

[2] It is unclear from the records whether plaintiff was incarcerated at this time.

3

suspected that plaintiff's difficulty moving his fingers was caused by Dupuytren's Contracture, which is a non-life threatening inherited disorder that affects the flexibility of finger joints. Id. ¶ 11. Plaintiff was transferred from Portsmouth to Hampton Roads before Dr. Cheshire could discuss this condition with him. Id.

### B. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that judgment as a matter of law is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden shifts to the nonmoving party to point out the specific facts that create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmoving party must present some evidence, other than its initial pleadings, to show that there is more than just a "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Celotex, 477 U.S. at 324 (quoting Rule 56(e)) ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by [other evidence] designate 'specific facts showing that there is a genuine issue for trial.'"). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine

when, "the evidence . . . create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985), abrogated on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). Therefore, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the nonmoving party. Matsushita Elec. Indus. Co.,475 U.S. at 587.

C. Analysis

Summary judgment in favor of defendant Dr. Cheshire is appropriate because the pleadings, affidavits, and exhibits on file demonstrate that Dr. Cheshire did not show deliberate indifference to plaintiff's serious medical needs.

*1. Eighth Amendment Standard*

To prevail on a claim of deliberate indifference to serious medical needs, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 105 (1976); see also Staples v. Va. Dep't of Corr., 904 F. Supp. 487, 492 (E.D. Va. 1995). Thus, a plaintiff must satisfy two distinct elements to show that he is entitled to relief. First, he must provide evidence that he suffered from a sufficiently serious medical need. A medical need is "serious" if it has been diagnosed by a physician as mandating medical treatment, or if a lay person would recognize the need for medical treatment. See Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)); see also Cooper v. Dyke, 814 F.2d 941, 945-46 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Brown v. District of Columbia, 514 F.3d 1279, 1284 (D.C. Cir. 2008) (concluding that the "intense and often relentless pain" associated with untreated gallstones is sufficiently serious); but see Hall v. Holsmith, 340 F. App'x 944, 947 & n.3 (4th Cir. 2009) (holding that flu-like symptoms did not constitute a serious medical need).

Second, a plaintiff must show that the defendant acted with deliberate indifference to his serious medical need. To act with deliberate indifference, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). An assertion of mere negligence or malpractice is not enough to state a constitutional violation; instead, plaintiff must allege and demonstrate "[d]eliberate indifference . . . by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), overruled in part by Farmer, 511 U.S. 825; see also Estelle, 429 U.S. at 106. In other words, a plaintiff must show that defendant's actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier, 896 F.2d at 851 (citations omitted). To act with deliberate indifference, a defendant must have actual knowledge of the potential risk of harm to an inmate; the mere fact that the defendant should have known of the risk is not sufficient to constitute deliberate indifference. See, e.g., Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001); Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard – a showing of mere negligence will not meet it.").

*2. Analysis*

It is clear from the facts presented that Dr. Cheshire responded reasonably to plaintiff's complaints of an injury to his hand. When plaintiff initially met with Dr. Cheshire, he indicated that any pain caused by his nearly two-month old injury had subsided. Nevertheless, Dr. Cheshire examined plaintiff's hand and ordered that x-rays be taken. The x-rays showed that plaintiff had suffered previous fractures to his right hand. When Dr. Cheshire learned that plaintiff's past medical history supported the x-ray findings, he concluded that plaintiff was not suffering from a serious injury and did not require any more extensive treatment. This decision was reasonable based on Dr. Cheshire's medical judgment. See, e.g., Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996) ("Whether and how pain associated with medical treatment should be mitigated is for

doctors to decide free from judicial interference, except in the most extreme situations."). The record shows that Dr. Cheshire's treatment was motivated by his conclusion that plaintiff was not, in fact, suffering from a serious physical injury. Such treatment does not constitute deliberate indifference. To act with deliberate indifference, a medical doctor must "actually . . . recognize[] that [their] actions [are] insufficient" to protect plaintiff from a known risk of harm. Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (citing Brown v. Harris, 240 F.3d 383, 390-91 (4th Cir. 2001)).

Plaintiff disagrees with Dr. Cheshire's conclusion that his pain was caused by an old injury. See Compl., at 5 ("(I did break my hand in 2008, but it had since healed properly.) This is a *new* injury.") (emphasis in original). Plaintiff also states that Dr. Cheshire ordered him to see a specialist, but that he never received an appointment. See id. Even if Dr. Cheshire did initially order a visit to a specialist which was then cancelled, plaintiff's allegations do not create a disputed issue of material fact. Based on the information presented to Dr. Cheshire – namely, that plaintiff had injured his hand nearly two months before and had previously suffered several injuries to the same hand – he provided adequate treatment for plaintiff's medical needs. Plaintiff's disagreement with Dr. Cheshire about the cause of his injury and the correct course of treatment for that injury is insufficient to establish deliberate indifference. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (citing Gittlemacker v. Prasse, 428 F.2d 1, 6 (3d Cir. 1970)).

In addition, because the evidence shows that when plaintiff first met with Dr. Cheshire he was no longer experiencing severe pain from his most recent injury, see, e.g., Cheshire Mem., Ex. 1, Att. A., at 1, it is clear that Cheshire did not ignore any complaints of serious pain, as plaintiff himself did not have any such complaints. That plaintiff later suffered from pain in his injured hand is irrelevant to the analysis of whether Dr. Cheshire, at the time that he provided medical treatment, was deliberately indifferent to plaintiff's medical needs. Absent the actual knowledge that plaintiff suffered from a severe medical need, he cannot be liable under the Eighth

Amendment.

Lastly, the record shows that plaintiff was transferred from Dr. Cheshire's facility less than a month after he first complained of any problem with his hand. Because it is clear from the record that Dr. Cheshire did not ignore plaintiff's complaint about his hand, he did not violate plaintiff's Eighth Amendment rights. Therefore, Dr. Cheshire's Motion for Summary Judgment is meritorious.

### IV. Dr. Kolongo's Motion to Dismiss

#### A. Background

Plaintiff arrived at Hampton Roads on January 24, 2014. Compl., at 5. Dr. Kolongo examined plaintiff's hand and ordered physical therapy. Id. Plaintiff states that he also met with another doctor who ordered a visit to a specialist, but it does not appear that he ever saw a specialist. Id. Plaintiff alleges that the physical therapy ordered by Dr. Kolongo "proved to be quite useless," that the physical therapist told him that he needed to have his hand re-set and that he continues to suffer from "limited usage of [his] hand," and suffers from "constant pain and dilemmas." Id.

#### B. Standard of Review

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must presume that all factual allegations in the complaint are true, and must draw all reasonable inferences in the plaintiff's favor. See, e.g., Burbach Broadcasting Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002). Therefore, a court may not dismiss a complaint if the plaintiff pleads any plausible set of facts that would entitle him to relief. See, e.g., Conley v. Gibson, 355 U.S. 41, 45-46 (1957). A claim has plausibility if the plaintiff alleges sufficient facts by which a court could reasonably infer the defendant's liability. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009 (citing Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007)). To meet this standard, however, the plaintiff must do more than simply allege "threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements . . . ." Id. (citing Twombly, 550 U.S. at 555)), but must allege facts that show more than a "mere possibility of misconduct" by the defendant. Id. at 679.

Although pro se prisoners must meet the plausibility standard to withstand a Rule 12(b)(6) motion, complaints filed by prisoners are held "to less stringent standards than formal pleadings drafted by lawyers . . . ." Haines v. Kerner, 404 U.S. 519, 520-21 (1972). Even under this lower standard, however, a pro se plaintiff must still plead facts sufficient to state a plausible claim for relief. See Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

### C. Analysis

The crux of plaintiff's claim against Dr. Kolongo is that he ordered treatment – in the form of physical therapy – which plaintiff claims was "useless." Plaintiff has not alleged any facts, however, to establish that Dr. Kolongo was objectively aware of a serious risk of physical harm, and deliberately ignored such a risk by ordering physical therapy. As stated above, a defendant only acts with deliberate indifference if he ignores a plaintiff's serious medical needs. Medical malpractice and negligence do not state a constitutional violation. See, e.g., Grayson, 195 F.3d at 695. Therefore, even if Dr. Kolongo misinterpreted the extent of plaintiff's injuries and provided inadequate treatment, such treatment does not constitute deliberate indifference. "A prison official is not liable if 'he knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was unsubstantial or non-existent.'" Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (quoting Farmer, 511 U.S. at 844).

On the contrary, it is clear from plaintiff's complaint that Dr. Kolongo ordered physical therapy. That plaintiff found this treatment to be "useless" does not establish that the treatment amounted to deliberate indifference, as a doctor is not constitutionally required to provide a specific type of treatment. See, e.g., Snipes, 95 F.3d at 592. The Constitution also does not require a doctor to remedy all of plaintiff's complaints of pain. See id. ("To say the Eighth

9

Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd.  It would also be absurd to say . . . that the Constitution requires prison doctors to administer the least painful treatment.").  Plaintiff's allegations do not establish that Dr. Kolongo's treatment violated the Eighth Amendment, and plaintiff has not bothered to respond to the defendant's Motion to Dismiss, thereby leaving the arguments in that motion uncontested.  Accordingly, Dr. Kolongo's Motion to Dismiss will be granted.

## V. Conclusion

For the above-stated reasons, Dr. Cheshire's Motion for Summary Judgment and Dr. Kolongo's Motion to Dismiss will be granted.  An appropriate Order shall issue.

Entered this 6th day of July 2015.

/s/
Leonie M. Brinkema
United States District Judge

Alexandria, Virginia